UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __9/5/16__

-------------------------------------------------------------X

BASIL OKOCHA,

        Plaintiff,

    -v.-

CAROLYN W. COLVIN, Acting
Commissioner, Social Security
Administration,

        Defendant.

-------------------------------------------------------------X

**OPINION AND ORDER**

15-CV-6954 (JLC)

**JAMES L. COTT, United States Magistrate Judge.**

*Pro se* plaintiff Basil Okocha seeks judicial review of a final determination by

the Acting Commissioner of Social Security ("Commissioner"), which concluded that

he was ineligible for Supplemental Security Income ("SSI") as of March 1, 2011, as a

result of his immigration status, and therefore discontinued his benefits. The

parties have cross-moved for judgment on the pleadings pursuant to Federal Rule of

Civil Procedure 12(c). For the reasons set forth below, the Commissioner's motion is

granted, Okocha's cross-motion is denied, and the complaint is dismissed.

## I. BACKGROUND

### A.    Prior Decisions

This case has been before the Court previously, but it was dismissed each

time for lack of subject-matter jurisdiction given Okocha's failure to exhaust his

administrative remedies. In the course of the prior proceedings, the undersigned

1

issued three reports and recommendations, each of which was adopted.[1]

Familiarity with these decisions is assumed. The prior proceedings are discussed

below only to the extent that they are relevant to the issues now before the Court.

## B.   Okocha's Immigration Status, Alleged Disabilities, and SSI Eligibility

Okocha, who was born in 1972, is from Nigeria. Administrative Record, Dkt.

No. 25 ("R."), at 17, 47, 148, 151. In September 2001, Okocha entered the United

States on a visitor visa. *Id.* at 168. About five months later, as of February 5, 2002,

he obtained political asylum.[2] Although the onset date is unclear, Okocha became

---

[1] *See* Report and Recommendation, dated May 19, 2011, No. 11-CV-1854 (LTS)
(JLC), Dkt. No. 21 ("First Adopted Report"), *adopted by*, Order, dated June 20, 2011,
Dkt. No. 23; Report and Recommendation, dated July 19, 2011, No. 11-CV-1854
(LTS) (JLC), Dkt. No. 25 ("Second Adopted Report"), *adopted by*, Order, dated Sept.
9, 2011, Dkt. No. 27; Report and Recommendation, dated Oct. 1, 2012, No. 11-CV-
1854 (LTS) (JLC), Dkt. No. 49 ("Third Adopted Report"), *adopted by*, Order, dated
Jan. 15, 2013, Dkt. No. 50. In the prior cases, the Honorable Laura Taylor Swain
adopted each of the Reports that had been issued. In this case, the parties have
consented to my jurisdiction for all purposes under 28 U.S.C. 636(c) and, as a result,
the Court issues an Opinion and Order rather than a Report and Recommendation
to resolve the pending motions. *See* Consent Form, dated Nov. 16, 2015, Dkt. No.
12.

[2] Based on sworn declarations by SSA officials, this Court previously determined
that Okocha was granted asylum as of February 5, 2002, a finding that Okocha has
never challenged. *See* First Adopted Report at 1, 2; Second Adopted Report at 1;
Third Adopted Report at 4; Declaration of Julio Infiesta, dated May 12, 2011, No.
11-CV-1854, Dkt. No. 17, ¶ 2 ("Plaintiff was granted asylee status as of February 5,
2002. . . ."); Declaration of Bryant Wilder, dated May 23, 2012, No. 11-CV-1854, Dkt.
No. 38 ("Wilder Decl."), ¶ 3 ("The review of plaintiff's Social Security records reveals
that plaintiff was granted asylum on February 5, 2002."). In the administrative
record now before the Court, the Commissioner states that Okocha obtained asylum
on February 2, 2002, in some places (R. at 17, 18, 108) and on February 5, 2002,
elsewhere (R. at 103). At Okocha's second hearing before an administrative law
judge ("ALJ"), however, Okocha testified that he had obtained asylum on May 5,
2002. *See* R. at 168 ("I . . . obtained political asylum. I think that was May – on
May 5, 2002."). Yet Okocha did not submit any evidence to the Court or to the ALJ
that he had obtained asylum in May (as opposed to February) 2002. Moreover,

blind at some point in the next few years. *See* R. at 27, 29, 45, 97, 129. On May 18,

2006, Okocha applied for SSI benefits. *Id.* at 45, 103, 123. The Social Security

Administration ("SSA") approved his application, and Okocha began receiving SSI

payments the next month. *Id.* at 16. At some point that year, in 2006, Okocha was

allegedly diagnosed with human immunodeficiency virus ("HIV"). *Id.* at 153.[3]

Almost three years later, on January 15, 2009, Okocha became a permanent

resident of the United States. R. at 28, 169.

## C.   Okocha's SSI Benefits Are Cut Off

On January 31, 2011, a little more than two years after he became a

permanent resident, SSA sent Okocha a notice that his SSI benefits would stop

effective March 1, 2011 (the "SSA notice"). *Id.* at 19. The SSA notice explained that

he had been eligible for these benefits through the SSI Extension for Elderly and

Disabled Refugees Act. *Id.* Generally, asylees and permanent residents are

ineligible for SSI benefits. 8 U.S.C. § 1612(a)(1) (making "qualified alien[s]"

generally ineligible for SSI); 8 U.S.C. §1641(b)(1)-(2) (defining "qualified alien[s]" to

include permanent residents and asylees). Despite this general prohibition,

---

Okocha has not challenged the ALJ's finding with respect to the date on which he
received asylum in any papers filed in this action. For these reasons, the Court
does not disturb its previous findings that Okocha obtained asylum in February, not
May, 2002.

[3] For purposes of this Opinion, the Court assumes that Okocha is HIV positive. *But
see Okocha v. Lab. Corp. of Am.*, No. 06-CV-1791 (JLL), 2008 WL 3843068, at *1-2
(D.N.J. Aug. 15, 2008) (dismissing case on summary judgment where Okocha
alleged "that a nurse—who was actually an FBI agent—intentionally injected [him]
with . . . HIV-infected blood" in part because Okocha "failed to provide any evidence
. . . that he is, in fact, HIV positive"), *aff'd*, 313 F. App'x 453 (3d Cir. 2009).

3

qualifying asylees were eligible for SSI for a seven-year period—that is, seven years from the date on which they received asylum. 8 U.S.C. § 1612(a)(2)(A)(ii). The SSI Extension for Elderly and Disabled Refugees Act, which was cited in the SSA notice, extended this period by two years, making asylees potentially eligible for a total of nine years. 8 U.S.C. § 1612(a)(2)(M)(i). Because Okocha had received asylum in February 2002, SSA determined that he would be ineligible for benefits by March 2011, as nine years would have passed by that date. *See* R. at 19.

The SSA notice included instructions on how to commence an administrative appeal. *Id.* at 23-24. To do so, the notice instructed Okocha to file a "Request for Reconsideration" within 60 days. *Id.* at 23. If he appealed within 10 days, Okocha was advised that he would continue to receive SSI payments until the appeal was decided. *Id.*

## D.     Okocha's Original Lawsuit and Subsequent Administrative Proceedings

Rather than commence an administrative appeal, Okocha filed a federal lawsuit on March 8, 2011. *See* First Adopted Report at 2. After denying a motion for a preliminary injunction, the Court ultimately concluded that the complaint should be dismissed for lack of subject-matter jurisdiction given that Okocha had failed to exhaust his administrative remedies. First Adopted Report at 7; Second Adopted Report at 5. The Court noted that the dismissal was without prejudice to Okocha filing another complaint once SSA issued a final decision. Second Adopted Report at 5.

4

After commencing the lawsuit, Okocha completed a form requesting an ALJ hearing, dated April 11, 2011. R. at 40. On November 1, 2011, SSA sent Okocha notice that a hearing would take place one month later, on December 1, 2011, to decide whether Okocha was "disabled under section 1614(a)(3)" of the Social Security Act. *Id.* at 53, 55. On December 1, 2011, an ALJ held a hearing, where Okocha appeared *pro se. Id.* at 97. During the hearing, the ALJ inquired about Okocha's blindness and HIV diagnosis, but asked no questions about his immigration status. *See generally id.* at 144-70. Several months later, the ALJ issued a "fully favorable" decision, dated April 20, 2012, which concluded that "Okocha was disabled as of May 18, 2006, the date [his] application for [SSI] was filed, and that . . . Okocha's disability has continued through the date of this decision." *Id.* at 97.

For reasons that are unclear, the ALJ failed to apprehend that the issue to be decided was not whether Okocha was disabled, but whether his immigration status precluded his SSI eligibility. *See id.* at 103; Defendant's Memorandum of Law in Support of a Motion for Judgment on the Pleadings, Mar. 14, 2016, Dkt. No. 27 ("Def. Mem."), at 4 n.6.

The notice accompanying the ALJ's "fully favorable" April 2012 decision stated that "[a]nother office will process [the] decision and decide if [Okocha] meet[s] the non-disability requirements for [SSI] payments." R. at 94. The decision itself also noted that the "component of the [SSA] responsible for authorizing [SSI] will advise . . . Okocha regarding the nondisability requirements." *Id.* at 100.

On April 23, 2012, SSA mailed Okocha another notice informing him that a "judge ha[d] approved [his] SSI hearing request," but that SSA needed certain financial and immigration documents. *See* Complaint, Aug. 30, 2015, Dkt. No. 2 ("Compl."), at 17;[4] Third Adopted Report at 7. The notice requested that Okocha visit the Bronx SSA district office by April 30, 2012. Third Adopted Report at 7; Compl. at 17. After Okocha failed to appear, SSA sent another notice, dated May 1, 2012, which began by exclaiming, "YOU HAVE BEEN APPROVED FOR SSI BENEFITS!" Compl., Ex. 1, at 10; Third Adopted Report at 7. The notice further advised Okocha that SSA had "yet to receive the evidence needed to establish [his] eligibility for" SSI and warned that his benefits would be denied if he failed to respond by May 15, 2012. Compl., Ex. 1, at 10; Third Adopted Report at 7.

Okocha appeared at the Bronx SSA office on May 4 and, again, on May 14, 2012. *See* Third Adopted Report at 8. During the second visit, an SSA caseworker allegedly told Okocha that he would not receive benefits regardless of what the ALJ had ordered. *See id.* That day, on May 14, 2012, Okocha moved to reopen his federal lawsuit, which had been dismissed, and requested that the Court issue an injunction for the immediate reinstatement of his SSI benefits. *See id.*

The Court granted Okocha's motion to reopen, but later dismissed the case since Okocha had still failed to exhaust his administrative remedies, as SSA had not yet issued a final decision. *Id.* at 8, 29. In doing so, however, the Court noted that SSA's communications with Okocha had not been "a model of clarity, and it

---

[4] All citations to page numbers of Okocha's papers refer to the page numbers generated by the Court's Electronic Case Files ("ECF") system.

6

[was] not surprising that Okocha may have thought he was entitled to a
reinstatement of benefits at this time." *Id.* at 2. After all, following the ALJ's "fully
favorable" decision, *see* R. at 94, 97, a subsequent notice to Okocha stated in all-
capital letters that he had been approved for benefits. *See* Third Adopted Report at
8 n.5. The Court dismissed the case, but again noted that the dismissal was
without prejudice to Okocha filing another complaint once SSA issued a final
decision. *Id.* at 29.

## E.    Second ALJ Decision and Subsequent Appeals Council Proceedings

On October 5, 2012, about a week after the undersigned issued the Third
Adopted Report, the ALJ who had presided over Okocha's prior administrative
proceedings rendered another decision. *See* R. at 108. In the new decision, which
was "Unfavorable" to Okocha, the ALJ identified the issue before him to be whether
"Okocha's eligibility for [SSI] ceased as of March 1, 2011 due to his immigration
status." R. at 104, 107. The ALJ concluded that, under 8 U.S.C. §§ 1612(a)(2)(A)(ii)
and 1612(a)(2)(M)(i)(I), asylees like Okocha were eligible for SSI for a total of nine
years after the date on which they had received asylum. R. at 107-08.[5] Because
SSA records demonstrated that Okocha had received asylum on February 2, 2002,
the ALJ concluded that Okocha was only entitled to SSI through February 2, 2011,

---

[5] Although the ALJ relied on subsection (I) of 8 U.S.C. § 1612(a)(2)(M)(i) for the
proposition that Okocha was eligible for SSI for two additional years (nine years
total), the Commissioner's briefs consistently cite subsection (II) for the same
proposition. *See* Def. Mem. at 2, 6, 9; Defendant's Reply Memorandum of Law, Apr.
27, 2016, Dkt. No. 34 ("Def. Reply") at 3; *see also* Wilder Decl. ¶¶ 5-7. The question
of which subsection applied to Okocha is academic, as both subsections extend the
seven-year period by two years, and Okocha received the benefit of a two-year
extension. *See* 8 U.S.C. § 1612(a)(2)(M)(i)(I)-(II).

7

and, thus, the ALJ affirmed the decision to stop SSI payments effective March 1, 2011. R. at 108. Before issuing this new decision, the ALJ did not hold another hearing or otherwise give notice that the ALJ would revisit Okocha's eligibility for SSI. *Id.* at 119.

By notice dated January 31, 2013, the SSA Appeals Council advised Okocha that it was "setting aside both [ALJ] decisions and sending [the] case back to an [ALJ] for more action and a new decision." R. at 115. The notice stated that, under SSA's rules, it could reopen a case within two years if there is "good cause." *Id.*; *see also* 20 C.F.R. § 416.1488. The Appeals Council found "good cause" because "there was clearly an error" in the previous decisions. R. at 116; *see also* 20 C.F.R. § 416.1489(a)(3). According to the notice, a subsequent letter would explain "the reason for [the Appeals Council's] action, and [Okocha's] rights in this review." R. at 116.

On February 5, 2013, the Appeals Council sent Okocha a five-page follow-up letter, which explained why the ALJ's decisions would be vacated. *See generally id.* at 117-21. The Appeals Council stated that the ALJ's first decision, dated April 20, 2012, which had found Okocha to be disabled, was "erroneous as a matter of law." *Id.* at 119. Okocha's "disability status" had "not [been] properly before" the ALJ, who was instead supposed to review the decision to stop Okocha's SSI payments because of his immigration status. *Id.* Although the ALJ's second decision, dated October 5, 2012, addressed that issue, the Appeals Council nonetheless vacated it as well given various procedural defects. *Id.* To begin, the ALJ had "not offer[ed]

8

[Okocha] a second hearing on the issue of [his] alien eligibility status" before rendering the new decision. *Id.* Moreover, the notice to Okocha regarding the December 1, 2011 hearing did not indicate that his immigration status was at issue. *Id.* Finally, Okocha had never received "proper notice that the [ALJ's] April 20, 2012 decision would be reopened and that a revised decision would be issued." *Id.*

Before actually ordering any corrective action, the Appeals Council gave Okocha an opportunity to respond. "In the absence of new and material evidence or pertinent legal argument," the Appeals Council stated that it was "prepared to remand [the] case to an [ALJ] for a new hearing and a new decision regarding issues involving [Okocha's] alien residence status and whether [SSA] properly stopped paying [him] [SSI] for March 2011 and thereafter." *Id.* Okocha was invited to "send . . . more evidence or a statement about the facts and the law" within 30 days. *Id.* at 120.

Having not received a response, the Appeals Council issued an order, dated May 1, 2013, directing the ALJ to "offer [Okocha] an opportunity for a hearing, ensure that the notice of hearing gives notice of the proper issue to be considered, take any further action needed to complete the administrative record and issue a new decision." *Id.* at 125.

## F.   ALJ's Final Decision and Evidence of Citizenship

On June 20, 2013, Okocha appeared *pro se* for another hearing before the same ALJ who had issued the two previous decisions. *Id.* at 165. At this hearing, the ALJ inquired about Okocha's immigration status. *Id.* at 168-69. Okocha

9

testified that he had arrived in the United States on September 5, 2001, on a visitor visa; that he had received political asylum on May 5, 2002; and that he had obtained a green card on January 15, 2009. *Id.* He also testified that he would be eligible to apply for citizenship in September 2013 and that he hoped to become an American citizen by September 2014. *Id.* at 169. Okocha did not submit any evidence to support his testimony that he had received asylum in May 2002.

The day after the hearing, the ALJ issued a third decision, dated June 21, 2013, which affirmed the decision to stop SSI payments to Okocha as of March 1, 2011. *Id.* at 18. The ALJ found that Okocha had first entered the United States on September 5, 2001, and that he had been granted asylum on February 2, 2002. *Id.* at 17. (The ALJ never addressed Okocha's testimony that he had received asylum a few months later, on May 5, 2002. *Id.* at 168; *see also supra* n.2.) The ALJ determined that asylees were potentially eligible for SSI for nine years from the date on which they were granted asylum—that is, seven years under 8 U.S.C. § 1612(a)(2)(A)(ii) and another two years under 8 U.S.C. § 1612(a)(2)(M)(i)(I). *Id.* at 17-18. Thus, the ALJ concluded that Okocha was eligible for SSI from February 2, 2002 (the date on which the ALJ found that Okocha had received asylum) to February 2, 2011. *Id.* at 18. Since Okocha's payments did not stop until March 1, 2011, after his eligibility had expired, the ALJ affirmed the prior determination to stop Okocha's SSI payments as of that date. *Id.*

The ALJ noted that Okocha had argued that he was eligible for SSI given his status as a permanent resident. *Id.* The ALJ concluded, however, that resident

10

aliens are ineligible for SSI under 8 U.S.C. §§ 1612(a)(l) and 1641(b)(1), unless they meet the criteria of an exception listed in 8 U.S.C. § 1612(a)(2)(A)-(M). *Id.* Since "Okocha [did] not meet the requirements of any listed exception," the ALJ concluded that he was properly declared ineligible for SSI as of March 1, 2011. *Id.* The notice accompanying the ALJ's June 21, 2013 decision stated that Okocha had 60 days to appeal. *Id.* at 13.

Okocha asked the Appeals Council to review the ALJ's decision in a document dated July 22, 2013. *Id.* at 138. In that submission, Okocha argued that he was eligible for SSI under "8 U.S.C. § 1612(F)(II),"[6] stating that he "meets th[e] criteria of this statute which the ALJ . . . refused to consider . . . in his decision." *Id.* Okocha contended that the "ALJ seems to think there is no disability, which is erroneous." R. at 139. Okocha continued: "It is not supported by law for a judge to issue unfavorable decisions based on a judge[']s perceived absence of disability, when there is ample evidence" to the contrary. *Id.* According to Okocha, his disability is "inhibiting him from gainful employment in his field of training" and "will eventually cost him his life." *Id.* Okocha further noted that he "is afflicted with an incurable form of visual malady" which "can only get progressively worse with time" and which has in fact worsened over the past few years. *Id.* at 139-40. Okocha argued that, despite evidence demonstrating that he qualified "for continued benefits," the ALJ "refuse[d] to take that into consideration, even when

---

[6] This statutory provision does not exist in the United States Code; Okocha appears to be attempting to cite 8 U.S.C. § 1612(a)(2)(F)(i)(II).

11

the [A]ppeals [C]ouncil . . . already let him know [that] his two previous decisions were erroneous." *Id.* at 140.

Although Okocha disputed many aspects of the ALJ's decision in his appeal, Okocha never contested the ALJ's factual findings with respect to his immigration status. Most important, the appeal was silent with respect to the ALJ's finding that Okocha had obtained asylum on February 2, 2002. *Id.* at 17, 138-41.

On January 8, 2014, Okocha submitted a follow-up letter to the Appeals Council. *Id.* at 142. In that letter, Okocha argued that "by law, immigration status should not be the aspect to consider in reaching a decision in [this] case since congenital disability is involved and was the reason the disability was first awarded before it was stopped illegally in March 2011." *Id.* The letter concluded by noting that Okocha was "writing to find out if any decision has been reached in the matter." *Id.* at 143. This letter was also silent with respect to the ALJ's finding that Okocha had received asylum in February 2002. *See generally id.* at 142-43.

According to documentation annexed to Okocha's complaint in this action, Okocha became a United States citizen on September 12, 2014. *See* Compl., Ex. 1, at 8; *see also* Motion for Interrogatories, Dec. 27, 2015, Dkt. No. 14 ("Pl. Int. Motion"), at 22. Since becoming a citizen, Okocha alleges that he has visited the SSA Bronx district office, where he waited "five hours" and was then "told to reapply for . . . SSI," even though his "appeals were still pending before the Appeals Council." Compl. at 3. Okocha further alleges that he has not submitted a new

12

application for SSI because filing "a new claim would . . . cause[] the loss of retroactive salary." *Id.* at 4.

On January 10, 2015, the Appeals Council issued a notice to Okocha stating that it had "found no reason" to review the ALJ's latest decision and therefore it "denied [Okocha's] request for review." *Id.* at 5. Consequently, the ALJ's third decision, dated June 21, 2013, became the Commissioner's final decision with respect to Okocha's administrative appeal. *Id.*; *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000) ("[I]f . . . the Council denies the request for review, the ALJ's opinion becomes the final decision."). Okocha was advised that he had 60 days to file a federal lawsuit to challenge the Commissioner's final decision. R. at 6; 42 U.S.C. § 405(g).

## G.   Procedural History of this Action

Okocha commenced this lawsuit by filing a complaint on September 2, 2015, well past the 60-day statutory deadline. Nonetheless, by order dated November 17, 2015, the Appeals Council retroactively extended "the time within which to commence a civil action . . . through September 2, 2015." *Id.* at 2; *see also* 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security . . . , may obtain a review of such decision by a civil action commenced within sixty days . . . or within such further time as the Commissioner of Social Security may allow.").

On December 30, 2015, Okocha filed a motion for interrogatories. *See* Pl. Int. Motion. The next week, the Court denied the motion on the ground that discovery

13

is inappropriate given the limited scope of the Court's review under 42 U.S.C.
§ 405(g). Order, Jan. 5, 2016, Dkt. No. 15.

On March 14, 2016, the Commissioner moved for judgment on the pleadings
pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See generally* Def.
Mem. Through papers dated March 18, 2016, Okocha opposed SSA's motion, cross-
moved for judgment on the pleadings, and moved to compel responses to his
interrogatories. *See* Plaintiff's Response, Mar. 18, 2016, Dkt. No. 29 ("Pl. Opp.");
Plaintiff's Motion for Judgment on the Pleadings, Mar., 18, 2016, Dkt. No. 30;
Plaintiff's Motion to Compel, Mar. 18, 2016, Dkt. No. 31.[7]

Through papers dated April 27, 2016, the Commissioner simultaneously
replied to Okocha's opposition papers, opposed Okocha's cross-motion for judgment
on the pleadings, and opposed Okocha's motion to compel. *See generally* Def. Reply.
Okocha submitted a supplemental brief, dated April 29, 2016, which the Court
construes as a reply to his cross-motion. *See* Plaintiff's Brief, Apr. 30, 2016, Dkt.
No. 36 ("Pl. Supp. Br.").

## II. DISCUSSION

### A.   Application of Relevant Law

When reviewing a final decision of the Commissioner, the Court may "enter,
upon the pleadings and transcript of the record, a judgment affirming, modifying, or
reversing the decision . . . , with or without remanding . . . for a rehearing." 42

---

[7] In his opposition papers, Okocha appears to misconstrue the Commissioner's
Answer (Dkt. No. 24) as a partial response to his interrogatories, which may help to
explain why Okocha moved to compel responses to his interrogatories even after the
Court denied his motion for interrogatories. *See* Pl. Opp. at 4.

14

U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." *Id.* The substantial evidence standard is "a very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). "It is the function of the Commissioner, not the courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Calzada v. Astrue*, 753 F. Supp. 2d 250, 268 (S.D.N.Y. 2010) (collecting cases).

The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, "curtailed the availability of SSI benefits for aliens." *Alesina v. Barnhart*, No. 01-CV-2812 (JG), 2002 WL 31409936, at *1 (E.D.N.Y. Sept. 30, 2002). As relevant here, the Act makes "qualified alien[s]" ineligible for "any specified Federal program," including SSI. 8 U.S.C. §§ 1612(a)(1), 1612(a)(3)(A). Qualified aliens include "alien[s] who [are] lawfully admitted for permanent residence" and "alien[s] who [are] granted asylum." 8 U.S.C. § 1641(b)(1)-(2). Thus, asylees and permanent residents are generally ineligible for SSI.

Despite this general prohibition, asylees are temporarily eligible for SSI pursuant to 8 U.S.C. § 1612(a)(2)(A)(ii). Specifically, under this statutory provision, the general prohibition does not apply to asylees "until 7 years after the date" on which they were "granted asylum." 8 U.S.C. § 1612(a)(2)(A)(ii). The SSI Extension for Elderly and Disabled Refugees Act of 2008, Pub. L. No. 110-328, extended this period for two more years, making qualifying asylees eligible for SSI for nine years in total. 8 U.S.C. § 1612(a)(2)(M)(i)(I)-(II).

15

Here, the ALJ's final decision states that "the record shows that the Unite[d] States of America granted . . . Okocha asylum status on February 2, 2002." R. at 17. This finding is consistent with the Court's previous findings, based on sworn affidavits by SSA officials, that Okocha had received asylum as of February 5, 2002. *See supra* n.2. Although Okocha testified that he had received asylum in May 2002, he has offered no evidence to support this later date, and he has not contested either the ALJ's previous findings (or this Court's) that he had received asylum on or before February 5, 2002. *See id.* Thus, the Court concludes that Okocha's eligibility for SSI ended no later than February 5, 2011. As a result, SSA's decision to stop payments effective March 1, 2011 was lawful, and the ALJ's decision concluding as much is upheld.

## B.   Okocha's Arguments

Okocha makes several arguments to the contrary. First, Okocha argues that he is entitled to benefits under "8 USC § 1612(F)(II)" because he has "political asylum status" and suffers from "legal blindness." *See* Compl. at 2; *see also* Pl. Opp. at 2, 3, 7; Pl. Supp. Br. 3, 4. Okocha's argument appears to be based on 8 U.S.C. § 1612(a)(2)(F)(i), as the exact statutory provision that he cites does not in fact exist. Okocha is correct insofar as he argues that 8 U.S.C. § 1612(a)(2)(F)(i) is an exception to the general rule that makes asylees and permanent residents ineligible for SSI.

The problem is that Okocha does not qualify for the exception. To be eligible, Okocha would need to have been (1) "lawfully residing in the United States on

16

August 22, 1996" <u>and</u> (2) be "blind or disabled." *See* 8 U.S.C. § 1612(a)(2)(F)(i)(I)-(II). Okocha may meet the second criterion, but he does not meet the first. By his own admission, he first entered the United States in September 2001—about five years too late to qualify. R. at 168. Thus, the statutory provision upon which Okocha appears to rely is inapplicable.

　　<u>Second</u>, Okocha argues that no law "excludes a 'disabled' recipient of . . . disability income when that recipient . . . achieves an upgrading in . . . immigration status from political asylee, to Permanent resident, while the disability for which he or she was granted the benefits in the first place . . . still remains." Compl. at 3; *see also* Pl. Opp. at 6-7. Here, Okocha seems to be under the impression that—although his underlying disability persisted—his benefits stopped because his immigration status was "upgrad[ed]" to permanent resident. *See* Compl. at 3.

　　But Okocha's SSI payments did not stop because he became a permanent resident. As discussed above, permanent residents are generally ineligible for SSI. *See* 8 U.S.C. §§ 1612(a)(1), 1641(b)(1). An exception is available for permanent residents who, among other things, have "worked 40 qualifying quarters of coverage." 8 U.S.C. § 1612(a)(2)(B)(ii). Okocha does not appear to have qualified for this exception or to have otherwise been eligible for SSI by virtue of his onetime status as permanent resident. Nevertheless, even after becoming a permanent resident, SSA continued to give him the benefit of the nine-year exception available to qualifying asylees. *See* 8 U.S.C. § 1612(a)(2)(M)(i)(I)-(II). Thus, Okocha's

17

"upgrad[e]" in immigration status did not cause his benefits to stop. *See* Compl. at
3.

Third, citing the ALJ's initial favorable decision, dated April 20, 2012,
Okocha complains that SSA has refused to "reinstate benefits ordered by" the ALJ.
Compl. at 4; *see also* Pl. Supp. Br. at 6. Though some of SSA's poorly worded
correspondence may have led him to believe otherwise, the ALJ's initial favorable
decision, which the Appeals Council vacated, did not purport to deem Okocha
eligible for SSI, not even by its own terms. Instead, in that initial decision, the ALJ
concluded that Okocha was disabled, but expressly left undecided whether Okocha
met the applicable "nondisability requirements," which would include immigration-
related conditions. *See* R. at 100. Thus, despite Okocha's argument to the contrary,
there has not been an order to "reinstate benefits" that SSA has refused to enforce.
*See* Compl. at 4.

Fourth, Okocha argues that he never received the ALJ's third decision, dated
June 21, 2013, which became the Commissioner's final decision in the
administrative appeal. *See* Compl. at 4-5; Pl. Supp. Br. at 5. Specifically, Okocha
states that he "was never issued a copy of [the decision], nor was [he] made aware of
its existence." *See* Compl. at 5. Okocha claims that he "only got to find out about"
the June 21, 2013 decision when he received the January 10, 2015 order from the
Appeals Council, which referred to it. *Id.* at 5. Okocha continues: "Withholding an
Order from a claimant to whom that Order is most important . . . is both [an] error

18

in law . . . as well as [a] breach of normal procedure." *Id.* at 6. To date, Okocha contends that the SSA has "refused" to issue him a copy of the decision. *Id.*

However, the record flatly contradicts Okocha's claim that SSA failed to provide him with a copy of the ALJ's third decision. In fact, Okocha discussed the decision at length in his July 22, 2013 letter to the Appeals Council. *See generally* R. at 138-41. Okocha appears now to claim that his July 22 letter was written in response to the second ALJ decision, dated October 11, 2012. *See* Compl. at 3. If so, it is peculiar that Okocha's July 22 letter expressly objects to the ALJ's "third decision . . . issued on June 21, 2013." *See* R. at 138. The contention that SSA failed to provide Okocha with the ALJ's final decision is thus disproven by the record.

Finally, Okocha argues that he is entitled to relief given the bureaucratic delay that has prolonged the resolution of this case. Specifically, Okocha contends that, according to SSA rules, the "appeals process" should "last[] no more than 9 months" but his "appeals over [SSA's] erroneous decisions have now lasted four and a half years"—"more than five times . . . the usual limit" and yet "the appeal is still not finished." Compl. at 7. Okocha argues that there "is absolutely no justifiable reason why this is happening other than victimization of [his] person" and that the delay "is not part of the procedure . . . especially when the benefits had been wrongly terminated." *Id.*

The Court is mindful of the fact that Okocha "has been waiting . . . years for a complete and properly evaluated determination of his eligibility for disability

19

benefits, and that long delays can cause uncertainty and turmoil in the lives of claimants." *Catsigiannis v. Astrue*, No. 08-CV-2177, 2013 WL 2445046 (ENV), at *5 (E.D.N.Y. June 4, 2013). Here, where Okocha allegedly suffers from both blindness and HIV, the delay may well have proven especially difficult.

But delay alone "is not a sufficient basis to reverse and award . . . benefits." *Giddings v. Astrue*, 333 F. App'x 649, 655 (2d Cir. 2009). Indeed, courts have declined to award benefits when faced with significantly longer delays. *See, e.g.*, *id.* (declining to award benefits where "application for the benefits at issue has been pending for over nine years"); *Bush v. Shalala*, 94 F.3d 40, 41 (2d Cir. 1996) (award of benefits inappropriate even though the case "has been wandering up, down, and around the administrative and judicial systems for over ten years"); *Falco v. Astrue*, No. 07-CV-1432 (FB), 2008 WL 4164108, at *7 (E.D.N.Y. Sept. 5, 2008) (not awarding benefits even though the "length of delay in this case is outrageous" having been "nineteen and a half years since [plaintiff] first filed for disability benefits" and having taken "over three years from the date of this Court's remand . . . for the denial of benefits currently at issue to be decided and made final").

Moreover, a "decision to reverse and direct an award for benefits 'should be made only when . . . substantial evidence on the record as a whole indicates that the Claimant is disabled and entitled to benefits.'" *Bush*, 94 F.3d at 46 (quoting *Gilliland v. Heckler*, 786 F.2d 178, 184 (3d Cir.1986)). Here, while there is arguably

substantial evidence of a disability, Okocha was plainly ineligible for benefits at the time of the ALJ's decision. Thus, the delay is not a basis for relief.[8]

## C.  No Remand Despite New Evidence of Citizenship

Although new evidence suggests that Okocha's immigration status is no longer an impediment to his SSI eligibility, the Court does not remand the case to the Commissioner to consider this new evidence. According to documentation submitted to the Court, Okocha became an American citizen on September 12, 2014—more than a year after his second ALJ hearing. *See* Compl., Ex. 1, at 8; Pl. Int. Motion at 22. Okocha made supplemental submissions to the Appeals Council after his second ALJ hearing, but he never submitted evidence of his citizenship. *See* R. at 8.[9]

_____

[8] Okocha also contends that the Commissioner has violated his constitutional rights. Pl. Opp. at 2 (arguing that the Commissioner is "abusing [Okocha's] constitutional rights" and the termination of his SSI benefits "amounted to a violation of [his] constitutionally protected rights"); *see also id.* at 8 (contending that Okocha seeks "punitive damages" against SSA for its "determined and continuous wrongs against [him] that amounted to victimization, discrimination, and continued violation of the rights . . . guaranteed by law"). The specific constitutional violations alleged by Okocha are unclear. The Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which denies federal benefits to previously eligible recipients on account of their immigration status, has been repeatedly upheld as constitutional. *See, e.g., Aleman v. Glickman,* 217 F.3d 1191, 1204 (9th Cir. 2000); *City of Chicago v. Shalala,* 189 F.3d 598, 609 (7th Cir. 1999). Okocha fails to articulate any argument that would call into question the Act's constitutionality or the Commissioner's enforcement of it. *See Muka v. Murphy,* 358 F. App'x 239, 241 (2d Cir. 2009) ("While we construe the *pro se* complaint liberally, plaintiff's vague and conclusory allegations plainly fail to state a civil rights claim with a basis in fact . . . .") (citations omitted).

[9] Such evidence would not have been a basis for the Appeals Council to disturb the ALJ's decision because the evidence was outside the relevant time period. *See, e.g., Laderson v. Astrue,* No. 10-CV-7797 (RPP), 2011 WL 6083189, at *8 (S.D.N.Y. Dec. 6, 2011) ("New and material evidence will provide a basis for the Appeals Council to

The Second Circuit has set out a three-part test governing when a court may remand a case to SSA to consider new evidence. The plaintiff must establish (1) that the evidence is "new and not merely cumulative of what is already in the record"; (2) that the evidence is "material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative"; and (3) that there is "good cause for [plaintiff's] failure to present the evidence earlier." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (citations omitted).

Even assuming that the other requirements are met, Okocha cannot establish that the evidence of his citizenship is material and probative, as it falls outside the relevant time period. That Okocha became a citizen on September 12, 2014, has no bearing on SSA's decision to stop his benefits effective March 1, 2011— more than three years earlier. Consequently, the Court does not remand the case for the Commissioner to consider evidence of Okocha's citizenship. *See Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996) (new and material evidence "must relate to the period on or before the ALJ's decision"); *Casiano v. Apfel*, 39 F. Supp. 2d 326, 331-32 (S.D.N.Y. 1999) (denying request for remand when new medical records were not relevant to the time period in question). As the Commissioner observes, however, Okocha may reapply for SSI benefits in light of his representation that he has become a naturalized citizen. *See* Def. Mem. at 10.

---

change the ALJ's decision 'only where it relates to the period on or before the date of the [ALJ] hearing decision.'") (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b)) (alterations in original).

22

## III.  CONCLUSION

The Commissioner's motion for judgment on the pleadings is granted, and Okocha's cross-motion for judgment on the pleadings is denied.  Okocha's motion to compel discovery is denied as moot.  This decision is without prejudice to Okocha's filing a new application for SSI given his representation that he became a United States citizen as of 2014.  The Clerk is directed to close Docket Nos. 26, 30, and 31, and enter judgment for the Commissioner.

**SO ORDERED.**

Dated:  New York, New York
         September 9, 2016

JAMES L. COTT
United States Magistrate Judge

**A copy of this Opinion and Order has been mailed to:**

Basil Okocha
15 North Street
Apt. 5B
Bronx, NY 10468

23